**Morgan WISE, Appellant,**

**v.**

**Wanda Elaine Wise FRYAR, Appellee.**

**No. 11–00–00196–CV.**

Court of Appeals of Texas, Eastland.

April 26, 2001.

---

John H. Rheinscheld, Robert D. Miller, Big Spring, for appellant.

Phyllis Royal, Odessa, for appellee.

Panel consists of ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

WRIGHT, Justice.

The question before this court is one of procedure. In 1999, appellant brought a bill of review challenging the trial court's final 1996 decree of divorce in which appellant was found to be the father of four children and in which appellant was awarded custody of all the children. In order for the trial court to be able to reach the merits of his arguments, appellant first had to prove that he was entitled to present his claims by a bill of review. The trial court found that he did not; therefore, the bill of review was denied without reaching the merits of appellant's claims.

The threshold issue before this court is whether it was error to deny appellant's bill of review. Because appellant did not establish that he was entitled to proceed with a bill of review, the trial court did not err, and the judgment is affirmed.

 A bill of review is a unique equitable remedy attacking a final judgment; and, as such, Texas law provides that the remedy is available in limited situations. The Texas Supreme Court in *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996 (1950), announced the general rules for a bill of review and explained why a bill of review is appropriate only in exceptional circumstances:

> Because it is fundamentally important in the administration of justice that some finality be accorded to judgments, these essentials have been uniformly recognized by our courts; therefore, bills of review seeking relief from judgments "are always watched by courts of equity with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted"; and the rules are not to be relaxed merely because it may appear in some particular case that an injustice has been done. *Harding v. W.L. Pearson & Co. et al.*, Tex.Com. App., 48 S.W.2d 964. As said by the Supreme Court of California, "Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice." *Pico v. Cohn et al.*, 91 Cal. 129, 25 P. 970, 971, 27 P. 537, 13 L.R.A. 336, 25 Am.St.Rep. 159.

*Alexander v. Hagedorn*, supra at 998; *Bristow v. Bristow*, 834 S.W.2d 497 (Tex. App.—Eastland 1992, no writ).

The parties in this case, Morgan Wise and Wanda Elaine Wise Fryar, were mar-

ried in August 1983. Four children were born during their marriage: a girl in 1985 and three boys in 1989, 1991, and 1992. Wanda filed an original petition for divorce on January 10, 1996. Shortly thereafter, Morgan filed a cross-petition for divorce seeking appointment as sole managing conservator of all four children. Both Wanda and Morgan alleged that they were the parents of all four of their children. The jury determined that Morgan should be appointed sole managing conservator of all four children. The trial court signed the final divorce decree on September 13, 1996, dissolving the marriage, determining that Wanda and Morgan were the parents of all four children, and appointing Morgan sole managing conservator of all four children. The divorce decree was not appealed.

Morgan remained sole managing conservator of the children until January 19, 1999, when he and Wanda agreed to modify custody. On March 2, 1999, Morgan filed a petition to again modify the parent-child relationship by seeking temporary orders appointing him sole managing conservator for the couple's youngest son and by alleging that the child's "present living environment may endanger the child's physical health or significantly impair the child's emotional development." Morgan contended that, since the agreed modification to custody, his youngest son had not received the necessary medical treatment for the child's cystic fibrosis, that the child at that time was hospitalized with pneumonia as a result, that the child's health appeared to "be going downhill," and that Wanda could not "treat this child the way the child should be treated for Cystic Fibrosis."

Three months later on June 17, 1999, Morgan filed the original petition for bill of review attacking the divorce decree by alleging for the first time that the three boys were not his biological children and that Wanda not only failed to disclose her "extra-marital affairs" but also "concealed a material fact": the identity of the father. Morgan amended his petition for bill of review to include a petition to establish paternity and tort claims of fraud and conspiracy. Morgan later filed a motion to sever his bill of review claims from these other claims. The motion was granted.

On March 28, 2000, the trial court conducted a hearing on Morgan's bill of review. Morgan testified that, while Wanda was pregnant with their first child, there was an "incident" between Wanda and a man she worked for. Morgan stated that, while their first child was still in diapers, he found a card written by Wanda to another man. Morgan testified that:

> It just said—stated that, "Your parents were nice," that she met her—met his parents, and that they spent, you know, I guess, the day together, and—you know, with [Morgan and Wanda's daughter], because she mentioned, you know, that—with [Morgan and Wanda's daughter] there. And at the bottom was that, "If you will take [Morgan and Wanda's daughter] and I, I will leave Morgan."

Morgan further testified that he found this card prior to the birth of the three boys, that he talked to Wanda about the card, that they "worked it out," that he did not remember the specifics of their conversation, and that he had not assumed that Wanda was having sex with the man to whom the card was addressed. Both in his deposition taken at the time of the divorce and at the bill of review hearing, Morgan acknowledged that "[s]omething had to go on for her to just want to get up and leave me." Morgan alleged in his amended bill of review that this man was the biological father of the three boys.

Morgan also testified that, at the time of the divorce, he did not see a need for paternity testing and that his attorney did not advise him "either way" about paternity testing. Morgan testified about Wanda and a man from Oklahoma but stated that he did not know if there had been a sexual relationship between the man and Wanda. Morgan identified a handwritten document as a list of psychological abuses he had suffered. Morgan testified that he had prepared the list for his attorney during the divorce. The first three items read: "Embezzling money from employer. Her affairs in Abilene. Her affairs in Big Spring." At the bill of review hearing, Morgan testified, "That's what I call them was affairs. I didn't go in depth as far as—but I didn't know that any sexual relationship—no, I did not." Morgan stated that, while he could speculate, he had never known what happened during Wanda's "affairs." Morgan identified six different men with whom, at the time of their divorce, he was aware that Wanda had had "affairs" with during their marriage.

Morgan further testified that he had had no reason to question paternity until after he received the results of a cystic fibrosis screen in March 1999. Morgan stated that, in order for the youngest child to be his biological child, Morgan would either have to have cystic fibrosis or have to be a carrier. Morgan testified that he did the test because he did not have cystic fibrosis and because he wanted "to see if [he] was a carrier of cystic fibrosis." Morgan said that the results showed that he was not a carrier of cystic fibrosis.

■ The law in Texas is well-settled concerning when a bill of review is appropriate. *Tice v. City of Pasadena*, 767 S.W.2d 700 (Tex.1989)(original proceeding); *Transworld Financial Services Corporation v. Briscoe*, 722 S.W.2d 407 (Tex. 1987); *Montgomery v. Kennedy*, 669 S.W.2d 309 (Tex.1984); *Baker v. Goldsmith*, 582 S.W.2d 404 (Tex.1979); *Petro–Chemical Transport, Inc. v. Carroll*, 514 S.W.2d 240 (Tex.1974); *Alexander v. Hagedorn*, supra. A bill of review is an independent equitable attack on a judgment which has become final because the time for filing a motion for new trial or for appealing the judgment has passed, and it is brought by a party to the final judgment. *Tice v. City of Pasadena*, supra; *Transworld Financial Services Corporation v. Briscoe*, supra; *Montgomery v. Kennedy*, supra; *Baker v. Goldsmith*, supra; *Alexander v. Hagedorn*, supra. In order to successfully attack the final judgment, the petitioner must allege and prove (1) a meritorious defense to the cause of action alleged to support the judgment (2) which the petitioner was prevented from making by fraud, accident, or wrongful act of the opposite party (3) unmixed with any fault or negligence of the petitioner. *Tice v. City of Pasadena*, supra; *Transworld Financial Services Corporation v. Briscoe*, supra; *Montgomery v. Kennedy*, supra; *Baker v. Goldsmith*, supra; *Petro–Chemical Transport, Inc. v. Carroll*, supra; *Alexander v. Hagedorn*, supra.

■ Before the merits of his assertions can be reached, Morgan must first establish that he was entitled to the extraordinary relief of a bill of review under Texas law. Morgan failed to meet this threshold requirement. In particular, Morgan did not establish that his failure to pursue paternity during the 1996 divorce proceedings was without negligence or fault on his part and was due to extrinsic fraud.

In 1983, 13 years before the divorce proceedings in this case, the Texas Legislature amended the Texas Family Code to allow a man the means to deny the paternity of a child born or conceived during the man's marriage. Former TEX. FAM. CODE § 12.06 (1983) now TEX. FAM.

CODE ANN. § 160.101 (Vernon Supp. 2001). When he filed his cross-petition for divorce, Morgan could have elected to challenge the paternity of any or all of the four children born during his marriage to Wanda. The record reflects that, at the time of their divorce, Morgan was aware not only of what Morgan described as Wanda's "affairs" in two cities and of her offer made prior to the birth of the three boys to leave Morgan for another man but also that Wanda had had these "affairs" with at least six men during their marriage. Instead of contesting paternity, Morgan chose to seek appointment as sole managing conservator of all four of the children born during his marriage to Wanda.

▆▆▆ The type of fraud which the petitioner must allege and prove is "extrinsic" not "intrinsic." *Tice v. City of Pasadena*, supra; *Transworld Financial Services Corporation v. Briscoe*, supra; *Montgomery v. Kennedy*, supra; *Alexander v. Hagedorn*, supra; *Bristow v. Bristow*, supra. The court in *Montgomery v. Kennedy*, supra at 312–13, explained the difference between extrinsic and intrinsic fraud as follows:

In relation to attacks on final judgments, fraud is classified as either extrinsic or intrinsic. Only extrinsic fraud will entitle petitioners to bill of review relief. *Alexander v. Hagedorn*, id. at 574, 226 S.W.2d at 1001.

We have stated or expressly approved that extrinsic fraud is that fraud which denies a losing litigant the opportunity to fully litigate his rights or defenses upon trial. Id. Extrinsic fraud is "collateral" fraud in the sense that it must be collateral to the matter actually tried and not something which was actually or potentially in issue in the trial. *Crouch v. McGaw*, 134 Tex. 633, 639, 138 S.W.2d 94, 97 (1940). Extrinsic fraud is conduct

that prevents a real trial upon the issues involved. *O'Meara v. O'Meara*, 181 S.W.2d 891, 893 (Tex.Civ.App.—San Antonio 1944, writ ref'd). Intrinsic fraud, on the other hand, is inherent in the matter considered and determined in the trial "where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein." *Mills v. Baird*, 147 S.W.2d 312, 316 (Tex.Civ.App.—Austin 1941, writ ref'd).

Included in intrinsic fraud are fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed. *Alexander v. Hagedorn*, 148 Tex. at 574, 226 S.W.2d at 1001. It is particularly well-established that the alleged perjury of a witness on a contested issue, which the opposing party had the opportunity to refute, is intrinsic fraud. *Crouch v. McGaw*, 134 Tex. at 637, 138 S.W.2d at 96.

*Tice v. City of Pasadena*, supra; *Alexander v. Hagedorn*, supra; *Bristow v. Bristow*, supra.

The fraud which Morgan alleges, that Wanda concealed and lied about her affairs with other men and about the parentage of the three boys born during their marriage breaching her fiduciary duty to Morgan, is not extrinsic fraud as Morgan contends. These are allegations of intrinsic fraud concerning an issue that was admitted, uncontested, and settled in the divorce proceeding: parentage of the children born of the marriage. *Tice v. City of Pasadena*, supra; *Montgomery v. Kennedy*, supra; *Alexander v. Hagedorn*, supra; *Ortmann v. Ortmann*, 999 S.W.2d 85 (Tex. App.—Houston [14th Dist.] 1999, pet'n den'd); *Bristow v. Bristow*, supra; *Shelton*

456

v. *Ray,* 570 S.W.2d 419 (Tex.Civ.App.—El Paso 1978, no writ).

 Morgan also contends that the denial of his petition for bill of review violated his state and federal constitutional rights of due process and equal protection by taking his property in the form of child support and by preventing him from presenting DNA evidence concerning paternity of the three boys. We disagree. Morgan opted not to pursue paternity of any of his children in 1996 even though he was aware of Wanda's "affairs" with at least six men in two different cities, and he voluntarily chose to modify custody and support arrangements in January 1999. The equitable remedy of bill of review is not available to challenge the prior choices a party has made concerning issues which have been litigated and resolved in a final, unappealed judgment. *Tice v. City of Pasadena,* supra; *Transworld Financial Services Corporation v. Briscoe,* supra; *Montgomery v. Kennedy,* supra; *Baker v. Goldsmith,* supra; *Petro–Chemical Transport, Inc. v. Carroll,* supra; *Alexander v. Hagedorn,* supra. Morgan's failure to establish the long-standing requirements necessary to present on a bill of review does not make the denial of his bill of review a denial of his constitutional rights.

 Morgan argues that the trial court erred in denying him the opportunity to present a bill of review on behalf of the three boys as next friend. A bill of review must be brought by a party to the challenged judgment or decree. *Tice v. City of Pasadena,* supra; *Transworld Financial Services Corporation v. Briscoe,* supra; *Montgomery v. Kennedy,* supra; *Baker v. Goldsmith,* supra; *Alexander v. Hagedorn,* supra. The children were not parties to the divorce proceedings and,

therefore, were not entitled to bring a bill of review proceeding. *R.M.H. by Gabert v. Messick,* 828 S.W.2d 226 (Tex.App.—Fort Worth 1992, no writ).

Because the requirements for a bill of review were not met, the trial court did not err in denying Morgan's petition.[1] Morgan's five points of error and his arguments under each point are overruled.

The judgment of the trial court is affirmed.

---

1. We note that, under similar circumstances, the Massachusetts Supreme Court recently reached the same result. *Paternity of Cheryl,* 434 Mass. 23, 746 N.E.2d 488 (Mass. 2001).