NO. 07-01-0438-CR
 


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



JUNE 28, 2002



______________________________




COLLIE B. WILLARD, III, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 95-420,722; HONORABLE JIM BOB DARNELL, JUDGE



_______________________________



Before BOYD, C.J., and QUINN and REAVIS, JJ.

 Pursuant to a plea bargain, (1) on September 30, 1997, appellant Collie B. Willard, III
was convicted of possession of a controlled substance and punishment was assessed at
five years confinement, suspended. Upon the State's second amended motion to revoke
appellant's community supervision for violations of the conditions thereof, on August 23,
2001, the trial court revoked community supervision and assessed punishment at four
years confinement. Appellant filed a general notice of appeal challenging the trial court's
judgment. In presenting this appeal, counsel has filed an Anders (2) brief in support of a
motion to withdraw. Based upon the rationale expressed herein, the appeal is dismissed
for want of jurisdiction.

 In support of his motion to withdraw, counsel has certified that he has diligently
reviewed the record and, in his opinion, the record reflects no reversible error or grounds
upon which an appeal can be predicated. Anders v. California, 386 U.S. 738, 744-45, 87
S.Ct. 1396, 18 L.Ed.2d 493 (1967); Monroe v. State, 671 S.W.2d 583, 585 (Tex.App.--San
Antonio 1984, no pet.). Thus, he concludes the appeal is frivolous and without merit. In
compliance with High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App. 1978), counsel has
candidly discussed why, under the controlling authorities, there is no error in the court's
judgment. Counsel has also shown that he sent a copy of the brief to appellant, and
informed appellant that, in counsel's view, the appeal is without merit. In addition, counsel
has demonstrated that he notified appellant of his right to review the record and file a pro
se brief if he desired to do so. Appellant did not file a pro se brief nor did the State favor
us with a brief.

 Appellate jurisdiction is invoked by filing a timely and proper notice of appeal. See
State v. Riewe, 13 S.W3d 408, 410 (Tex.Cr.App. 2000). To perfect an appeal from a
judgment that was rendered on a defendant's guilty plea and in which the punishment
assessed did not exceed the punishment recommended by the prosecutor and agreed to
by the defendant, a notice of appeal must (a) specify that the appeal is for a jurisdictional
defect; (b) specify that the substance of the appeal was raised by written motion and ruled
on before trial; or (c) state that the trial court granted permission to appeal. Tex. R. App.
P. 25.2(b)(3); see also White v. State, 61 S.W.3d 424, 428-29 (Tex.Cr.App. 2001) (holding
that the notice requirements set forth in Rule 25.2(b)(3) should be interpreted according
to their plain meaning and that failing to meet the requirements fails to invoke the
jurisdiction of an appellate court); see also Vidaurri v. State, 49 S.W.3d 880, 884
(Tex.Cr.App. 2001) (holding that the notice of appeal limitations of Rule 25.2(b)(3) apply
to an appeal from a conviction rendered on a guilty plea with agreed punishment). 

 Appellant's notice of appeal does not contain any of the requirements set forth in
Rule 25.2(b)(3) necessary to invoke this Court's jurisdiction over his conviction. Thus, our
jurisdiction has not been invoked and the appeal must be dismissed. Accordingly, the
appeal is dismissed for want of jurisdiction and we are without jurisdiction to rule on
counsel's motion to withdraw.



 Don H. Reavis

 Justice


Do not publish. 
1. The criminal docket sheet included in the clerk's record reflects that appellant
entered into a plea bargain agreement.
2. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).



urt make a new division of the property
divided in the original divorce decree. Lori’s request for relief, through the bill of review
process, is founded upon the allegations that Thomas committed fraud. According to the
petition, the fraud was in the nature of fraudulent representations regarding what the
relationship of the parties would be after the divorce. Lori posits that Thomas’s actions
prevented her from asserting claims against him for fraud on the community, fraud on a
spouse’s separate property, breach of fiduciary duty, duress, and overreaching. 
          Thomas filed a traditional motion for summary judgment alleging that, as a matter
of law, Lori could not establish a prima facie case in support of her bill of review. The trial
court granted a partial summary judgment, reserving the issue of attorney’s fees. 
Thereafter, Thomas filed a motion for summary judgment on the issue of attorney’s fees. 
The trial court granted this summary judgment and entered a final judgment. This appeal
resulted from the entry of this final judgment.
Standard of Review
          A party may prevail on a summary judgment motion by conclusively establishing the
absence of any genuine issue of a material fact and that the party is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c). If the summary judgment movant is a
defendant, the movant must conclusively negate at least one of the elements of the non-movant’s cause of action or must conclusively prove each element of an affirmative
defense. Randall’s Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). We
review the granting of a traditional summary judgment motion de novo, applying the
standards set out in Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985): 
1. The movant for summary judgment has the burden of showing that there
is no genuine issue of material fact and that it is entitled to judgment as a
matter of law. 
2. In determining whether there is a disputed issue of material fact
precluding summary judgment, evidence favorable to the non-movant will be
taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant
and any doubts resolved in its favor.
Bill of Review
          A bill of review is an equitable action brought by a party to a previous suit seeking
to set aside a judgment which is no longer appealable or subject to a motion for new trial. 
See King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). A bill of review is
proper where a party has exercised due diligence to prosecute all adequate legal
remedies against a former judgment and, at the time the bill of review is filed, there
remains no adequate legal remedy available through no fault of the proponent. Baker v.
Goldsmith, 582 S.W.2d 404, 408 (Tex. 1979). Ordinarily, one with an available appellate
remedy who fails to pursue that remedy is not entitled to seek relief by way of a bill of
review. Rizk v. Mayad, 603 S.W.2d 773, 775 (Tex. 1980). Because of the fundamental
importance of the finality of judgments, bills of review are examined closely and the
grounds upon which a bill of review can be obtained are narrow and restricted. Alexander
v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998 (1950). To successfully challenge a
judgment by bill of review, the petitioner must prove: (1) a meritorious defense to the
cause of action; (2) that petitioner was prevented from making the defense by the fraud,
accident, or wrongful act of the opposite party; and (3) that the failure to make the defense
was unmixed with any fault or negligence of the petitioner. King Ranch, Inc., 118 S.W.3d
at 751 (citing Alexander, 226 S.W.2d at 998.).
          Fraud in relation to a bill of review attack on a final judgment is either extrinsic or
intrinsic. Id. at 752. Only extrinsic fraud will support a bill of review. Id. (citing Tice v. City
of Pasadena, 767 S.W.2d 700, 702 (Tex. 1989)). Extrinsic fraud is fraud that denied a
party the opportunity to fully litigate at trial all the rights or defenses that could have been
asserted. Id. Intrinsic fraud, by contrast, relates to the merits of the issues that were
presented and presumably were or should have been settled in the former action. Id. 
Within that term are included such matters as fraudulent instruments, perjured testimony,
or any matter which was actually presented to and considered by the trial court in rendering
the judgment assailed. Id. Such fraud will not support a bill of review because each party
must guard against adverse findings on issues directly presented. Id. (citing Tice, 767
S.W.2d at 702 and Alexander, 226 S.W.2d at 998). Issues underlying the judgment
attacked by a bill of review are intrinsic and thus have no probative value on the fraud
necessary to a bill of review. Id. 
Analysis
          Lori contends that Thomas committed fraud because he was only able to get her
to sign the post-nuptial agreement by overcoming her free will and this post-nuptial
agreement became the agreement incident to divorce that was embodied in the final
decree of divorce. Further, she contends that, at the time of the divorce she did not know
the extent or value of the marital estate. To support these allegations, Lori sets forth a
myriad of factual allegations of Thomas’s alleged abusive conduct during the marriage. 
Finally, Lori argues that the disproportionate property division can not be allowed to stand. 
           Assuming, arguendo, that Lori’s contention regarding the original post-nuptial
agreement is correct, it does not demonstrate extrinsic fraud as to the 2003 divorce decree. 
The record reflects that Lori employed an attorney to represent her in the divorce
proceeding. The record further reflects that the attorney filed an answer and appeared at
the final hearing on the divorce. During that hearing, Lori’s attorney made the following
statement,
She expressed concern to me that although she was not sure about the
extent and magnitude of the parties’ estate, that she was of the opinion that
she was only going to receive approximately 20 percent of the total estate in
terms of the proposed agreement.
****
She came back later Friday afternoon and delivered me a handwritten copy
of that postnuptial agreement....Had a phone conversation with Ms. Noonan
yesterday afternoon and explained to her that in my opinion she had at least
a reasonable chance of setting the postnuptial agreement aside because she
alleged she had not signed it voluntarily, and she, based on representations
made to me, appeared that it might be [un]conscionable and that she did not
have full disclosure of the assets of the parties at the time she executed it.
 
This statement clearly shows that, at the time the decree complained of was entered, Lori
had knowledge of a possible defense to the entry of the agreement incident to divorce
based on the post-nuptial agreement. As such, this was an issue that could have been
presented to the trial court and, therefore, cannot serve as the basis for a bill of review. 
Id. 
          Lori also contends that she lacked capacity to sign the 2003 divorce decree. 
However, her attorney’s representations to the court are contrary to that position. In the
same statement to the court quoted above, Lori’s attorney further explained that she had
come to his office on the morning of the hearing and asked to sign off on the agreement. 
Lori explained that she did feel pressured and unable to stand up to going through the
proceedings. Lori then asked that he appear for her and sign off on the agreement. In
response to the trial court’s question whether Lori was asking the trial court to approve the
instruments, trial counsel answered, “That’s my understanding. She asked me to go ahead
and sign off.” Again, all these statements show that Lori, for whatever reason, understood
what was about to take place and did not choose to personally go through the process. 
Yet, Lori’s affidavit clearly demonstrates that she was present in the courtroom at the time
the hearing was conducted. In reviewing Lori’s evidence of coercion and duress that
overcame her free will or demonstrated a lack of capacity, we find that nearly all of the
alleged coercion was during the marriage and dealt with the execution of the original post-nuptial agreement. As stated above, Lori was aware of this and, in fact, her attorney
discussed these matters with her. Therefore, it was, at best, intrinsic fraud and would not
support a bill of review. Id. As to the evidence that Thomas threatened her by stating that
if Lori fought the divorce she would get less because he would spend it all on attorney’s
fees, we note that Lori has provided the Court with no cases supporting the proposition that
a threat to litigate is the type of coercion that would overcome someone’s free will or
remove their capacity to consent nor have we found any authority to support this
proposition. 
          Lori also contends that Thomas’s reaction to her consulting with an attorney and
filing an answer was so violent that it overcame her own free will. To this end, Lori has
provided the affidavit of a witness, Claudia Davis. Yet, an examination of Lori’s affidavit
reveals that the incident in question occurred before Thomas filed for divorce. After the
alleged incident, Lori met with an attorney, discussed the proposed decree, and, indeed,
the attorney filed an answer and appeared for Lori. Therefore, the very issue Lori said the
outburst was designed to prevent, Lori seeking legal assistance, occurred. Accordingly,
we cannot say Lori’s free will was overcome by Thomas’s alleged duress and coercion. 
Finally, with Lori’s declaration that the pivotal abusive incident occurred not a day or two
before the final decree, Lori’s attorney participating in the final hearing, and Lori’s own
presence in the courtroom, we are strained to conclude that Lori was not aware of all that
was going on and was unable to meaningfully participate in the trial. Rather, all of these
matters were known to Lori and her attorney and would, at best, be classified as intrinsic
fraud that would not support her bill of review. Id. Finally, her failure to pursue an appeal
when she was aware of the issues and the possible merits of an appeal demonstrate a lack
of diligence and, therefore, are negligence attributable to Lori. As such, this also defeats
her claim for relief via a bill of review. Rizk, 603 S.W.2d at 775. At the end of the day, it
appears to this Court that what is presented is nothing more than allegations that the
decree of divorce provided an inequitable and unfair division of the marital estate. An
injustice in a final order will not support relief for a party by a bill of review. See Crouch v.
McGaw, 134 Tex. 633, 138 S.W.2d 94, 96 (1940). Accordingly, we find that the trial court
did not err in granting the summary judgment.              
Attorney’s Fees
          As the issue of attorney’s fees was dependent on our reversal of the granting of the
summary judgment, we affirm the trial court’s award of attorney’s fees.
Conclusion
          Having overruled all of Lori’s issues, we affirm the judgment of the trial court.
 
                                                                           Mackey K. Hancock

                                                                                     Justice